ERIC GRANT
United States Attorney
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MONIQUE MARIE GONZALES GRADO,<br><br>Defendant. | CASE NO. 2:25-cr-0080 JAM<br><br>PLEA AGREEMENT<br><br>DATE: SEPTEMBER 9, 2025<br>TIME: 9:00 a.m.<br>COURT: Hon. JOHN A. MENDEZ |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The Indictment in this case charges the defendant with violations of 18 U.S.C. § 1344 – Bank Fraud (5 Counts) and 18 U.S.C. § 1028A – Aggravated Identity Theft (2 Counts). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the

1 Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

The defendant will plead guilty to Count 1 – 18 U.S.C. § 1344 – Bank Fraud, and Count 6 – 18 U.S.C. § 1028A – Aggravated Identity Theft. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.    Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her conduct is governed by the Mandatory Victim Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3),

and other victims as a result of the defendant's conduct for the offenses charged from the periods of August 7, 2022 through October 3, 2022. The amount of restitution will be between $8,000 and $150,000 dollars.

Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of her assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**C.     Fine.**

The parties agree that no fine is appropriate in this case.

**D.     Special Assessment.**

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E.     Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its

representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before

or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment and agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A. The government also agrees not to reinstate any dismissed count or bring additional charges except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court for the 18 U.S.C. § 1344 offense, plus the 2-year mandatory

sentence under 18 U.S.C. § 1028A.

        2.      Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

    **C.**    **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

**IV.    ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

Bank Fraud – 18 U.S.C. § 1344:

First, the defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

Second, the defendant knew that the statements or promises were false;

Third, the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

Fourth, the defendant acted with the intent to defraud; and

Fifth, the financial institution was federally insured.

Aggravated Identity Theft – 18 U.S.C. § 1028A:

First, the defendant knowingly transferred, possessed or used without legal authority a means of

identification of another person;

Second, the defendant knew that the means of identification belonged to a real person; and

Third, the defendant did so during and in relation to her commission of the felony violation of Bank Fraud.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.    MAXIMUM SENTENCE

### A.    Maximum Penalty.

The maximum sentence that the Court can impose on a violation of 18 U.S.C. § 1344 is 30 years of incarceration, a fine of $1,000,000 or twice the gross gains or gross loss, whichever is greater, or both fine and imprisonment, a five-year period of supervised release and a special assessment of $100. A violation of 18 U.S.C. § 1028A carries a mandatory two-year term of incarceration, consecutive to any sentence imposed on any other counts, a fine of up to $250,000, a maximum one-year period of supervised release, and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.    Violations of Supervised Release.

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years imprisonment.

## VI.    SENTENCING DETERMINATION

### A.    Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing

Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

Count 1 – Bank Fraud

    1.    Base Offense Level: 7 [U.S.S.G. § 2B1.1(a)(1)]

    2.    Loss Amount: +8 [U.S.S.G. § 2B1.1(b)(1)(E) – loss between $95,000 and $150,000]

    3.    Substantial Hardship to Victim-1 and Victim-2: +2 [U.S.S.G. § 2B1.1(b)(2)(A) – Victim-1 suffered substantial harm to his/her ability to obtain credit; Victim-2 suffered unreimbursed financial losses]

    4.    Means of Identification Enhancement: +2 [U.S.S.G. § 2B1.1(b)(11) – possession and use of authentication feature, unauthorized use of a means of identification unlawfully to obtain any other means of identification, or possession of 5+ means of identification]

    5.    Acceptance of Responsibility: See paragraph 0 above

Count 6 – Aggravated Identity Theft

In addition to the above Guidelines, the defendant also understands that her plea to Count 6 carries with it a mandatory sentence of 24 months to run consecutive to the sentence imposed for her plea to Count 1. [U.S.S.G. § 2B1.6.]

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a), except she cannot argue for a sentence below the 2-year mandatory consecutive sentence under 18 U.S.C. § 1028A. The government will recommend that the defendant be sentenced to the low-end of the applicable guideline range as determined by the Court for the 18 U.S.C. § 1344 offense, plus the 2-year mandatory sentence under 18 U.S.C. § 1028A.

PLEA AGREEMENT    8

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty pleas, convictions, and sentence. The defendant agrees as part of her pleas, however, to give up the right to appeal the guilty pleas, convictions, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's convictions and guilty pleas, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's pleas of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty pleas, convictions, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

attempts to vacate her pleas, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9-9-2025

_____
MEGAN HOPKINS
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea

PLEA AGREEMENT                    10

agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9-9-2025

_____
MONIQUE MARIE GONZALES GRADO
Defendant

C.  **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 9/9/2025

~~KIMBERLY A. SANCHEZ~~ Eric Grant
~~Acting~~ United States Attorney

_____
DHRUV M. SHARMA
Assistant United States Attorney

# EXHIBIT "A"

## Factual Basis for Pleas

Between August and October of 2022, in the County of Sacramento, State and Eastern District of California, and elsewhere, GONZALES GRADO obtained personal identifying information of a victim, VICTIM-1, including his/her name, date of birth, and address, as well as VICTIM-1's California Driver's License, California Identification Card, and Social Security card. GONZALES GRADO then knowingly and with intent to defraud used VICTIM-1's personal information and identification documents in a scheme to defraud for her own personal and financial gain, in the following ways.

### *GONZALES GRADO Used VICTIM-1's Information to Get Bank Loans and Open Accounts*

On or about August 2, 2022, GONZALES GRADO applied for and obtained a $27,016 vehicle loan in VICTIM-1's name in order to purchase a 2014 Mercedes-Benz E350 from an online car dealership. In addition to using VICTIM-1's name, date of birth, Social Security Number, and California Driver's License in connection with the loan application, GONZALES GRADO created and used a false e-mail address with VICTIM-1's name, and a fake employment profile for VICTIM-1.

A few days later, on or about August 7, 2022, she applied for and obtained a $55,079.74 vehicle loan in VICTIM-1's name from a credit union, CREDIT UNION-1, in order to purchase a 2019 Jaguar F-Pace from a different car dealership. GONZALES GRADO again presented the dealership with VICTIM-1's California Driver's License, and also used VICTIM-1's signature, Social Security Number, date of birth, actual address, and the same false e-mail address and fake employment profile. In connection with this loan, GONZALES GRADO also used VICTIM-1's identifying information to open a savings account, a checking account, and a credit card account at CREDIT UNION-1.

Later that same month, on or about August 28, 2022, GONZALES GRADO applied to CREDIT UNION-1 for a $20,000 personal loan in VICTIM-1's name, citing "medical expenses." She again used VICTIM-1's date of birth, Social Security Number, actual address, California Driver's License, and the fake e-mail address and employment profile that she had created in order to complete the application. CREDIT UNION-1 approved a $5,000 loan and deposited the amount into the checking account opened in VICTIM-1's name. GONZALES GRADO then withdrew much of the loan amount, either through

online transactions or ATMs located around Sacramento County, and spent some of the remaining money on personal expenses.

***GONZALES GRADO Used VICTIM-1's Information to Deposit Altered Checks***

Over the next two months, GONZALES GRADO also used the accounts at CREDIT UNION-1 to deposit at least two checks that she had improperly obtained and altered to replace the intended payees with VICTIM-1's name. The two checks, in the amounts of $23,714 and $8,282, respectively, had originally been issued and mailed by an individual, VICTIM-2, seeking to pay his/her tax obligations to federal and state taxing authorities. After GONZALES GRADO obtained the checks, she removed the taxing authorities' names from each check, and replaced it with VICTIM-1's name. She then deposited the checks at a CREDIT UNION-1 location. Subsequently, GONZALES GRADO was able to withdraw large amounts at ATMs, and spend some of the remaining money on personal expenses. Victim-2 was assessed additional fines and fees by the taxing authorities and was not reimbursed for the losses he/she suffered because of the altered checks. GONZALES GRADO was observed on surveillance footage accessing the ATMs at CREDIT UNION-1 locations on multiple instances during the relevant time period.

By committing the acts described above, GONZALES GRADO knowingly and with the intent to defraud carried out a scheme or plan to obtain money from CREDIT UNION-1 by making knowingly false statements about her identity. GONZALES GRADO's statements were material, in that they had a natural tendency to influence, were capable of influencing, and did in fact influence CREDIT UNION-1 to part with money. For example, CREDIT UNION-1 relied on information such as VICTIM 1's credit history, income and liability disclosures, and the absence of any prior bankruptcy or fraud activity, in order to approve the $55,079.74 car loan that allowed GONZALES GRADO to purchase the 2019 Jaguar F-Pace.

In total, GONZALES GRADO caused a total actual or intended loss of between $95,000 and $150,000 as a result of her scheme. During all relevant times, CREDIT UNION-1 was a financial institution serving customers in multiple counties in the State and Eastern District of California and was federally insured by the National Credit Union Administration.

***GONZALES GRADO Was Caught With VICTIM-1's Documents***

In August of 2023, GONZALES GRADO met with the Sacramento County Sherriff's Office regarding probation terms arising out of a conviction in state court for unrelated conduct. She drove to this meeting in the Jaguar F-Pace that she fraudulently obtained using VICTIM-1's identity, and in an interview identified the vehicle as hers. Law enforcement seized and searched the vehicle and among other items, recovered VICTIM-1's California Driver's License and California Identification Card, more than five debit/credit cards in VICTIM-1's name, VICTIM-1's Social Security card, and another California Driver's License in the name of another person but with GONZALEZ GRADO's image. During the course of the investigation, law enforcement also searched the contents of several e-mail and online cloud storage accounts associated with GONZALES GRADO, and found further evidence of her intent to commit fraud, including documents explaining how to create fake identification documents, several fake identification documents with GONZALES GRADO's image, documents and images showcasing currency counterfeiting activity or merchant terminal-related fraud, and a 75-page guide on how to commit bank fraud.

***GONZALES GRADO Used Victim-1's Identity in Many Other Ways***

In addition to the above conduct, GONZALES GRADO also used VICTIM-1's personal identifying information to open an account with a mobile phone provider, and to lease an apartment in Sacramento, California. Moreover, on August 10, 2022, GONZALES GRADO was stopped by law enforcement for speeding while driving the Mercedes Benz obtained in VICTIM-1's name. When asked for identification, GONZALES GRADO provided law enforcement with VICTIM-1's California Driver's License, and was thus able to avoid a traffic citation, which was instead issued to VICTIM-1.

During all relevant times, GONZALES GRADO knew VICTIM-1 was a real person, and knowingly used VICTIM-1's means of identification without legal authority and without VICTIM-1's consent, including during and in relation to her commission of bank fraud against CREDIT UNION-1. As a result of GONZALES GRADO's conduct, VICTIM-1 suffered a substantial harm to his/her ability to obtain credit as his/her credit score dropped by approximately 200 points.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct and personal knowledge is concerned, I adopt it as my own true statement.

Dated: 9-9-2025

_____
MONIQUE MARIE GONZALES GRADO
Defendant

PLEA AGREEMENT                    A-4